**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 24-CR-30153 |
| | ) |
| DANA C. HOWARD, RICHARD | ) |
| SCOTT MYERS, and GLENN | ) |
| SUNQUIST, | ) |
| | |
| **Defendants.** | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on the Motion to Dismiss the Indictment or, in the

Alternative, to Disqualify the Prosecution Team filed by Defendant Richard Scott Myers

and joined by Defendants Dana C. Howard and Glenn Sunquist. (Doc. 80) and on the

Government's Motion to Disclose (Doc. 115). The Court heard oral argument as to both

motions on May 14, 2026.

## I.   Background

In May 2023, the government obtained a search warrant authorizing the seizure of

three corporate email accounts, one associated with each Defendant. On July 24, 2023, the

FBI delivered the seized materials to the United States Attorney's Office ("USAO") on a

flash drive. Because the USAO had reason to believe the materials could contain attorney-

client privileged information or work product, a filter team was established. The filter

team's role was to review the materials, segregate any potentially privileged items, and

provide only non-privileged materials to the prosecution team.

Unfortunately, the filter process was flawed. On more than one occasion, members of the prosecution team identified potentially privileged materials while reviewing a database of seized materials that was not supposed to contain any privileged items. It remains unclear how significant those flaws were or whether any member of the prosecution team actually viewed the content of any privileged material. These issues with the filter process form the basis of the pending motion to dismiss the indictment or disqualify the prosecution team.

## II.    Discussion

Defendants contend that the filter process is inherently flawed because, under *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019), assigning privilege determinations to an executive-branch filter team, without prior judicial oversight, violates separation-of-powers principles. They argue that resolving attorney-client privilege and work-product disputes is exclusively a judicial function. The Court disagrees. The Fourth Circuit decision is distinguishable and not controlling in this Circuit. The Court is more persuaded by the reasoning of the Seventh Circuit in *United States v. Snyder*, 71 F.4th 555 (7th Cir. 2023), rev'd and remanded on other grounds, 603 U.S. 1 (2024). In *Snyder*, the Seventh Circuit upheld a pre-indictment filter-team process for a defendant's emails, rejected Sixth Amendment right-to-counsel challenges (because the right had not yet attached), and declined to require upfront judicial oversight or appointment of a special master.

The *Snyder* Court read *in re search warrant* as standing for the proposition that "once a claim of privilege is made, a court may not delegate its responsibility to resolve

2

that dispute to the executive branch." *Id.* at 565. In other words, the prohibition applies only after a specific, concrete claim of privilege has been asserted as to a particular document or communication; not to a generic assertion that privileged materials "might" exist somewhere in a large production. The Seventh Circuit rejected any broader reading that would require courts to act as "legal advisers to investigators" or to resolve hypothetical legal questions "before any claim of privilege is made or any concrete dispute arises," because such an approach would violate Article III's prohibition on advisory opinions. *See id.* (citing *E.F.L. v. Prim*, 986 F.3d 959, 962 (7th Cir. 2021)).

Accordingly, Defendants' motion directed at the filter process is premature. No specific claim of privilege has yet been asserted as to any particular document. Without concrete assertions of privilege, followed by a determination whether the identified documents are in fact privileged and whether any such privileged material was actually viewed by the prosecution team, the Court cannot meaningfully assess the filter process, evaluate the existence or extent of any taint, or determine whether dismissal or disqualification is warranted.

### III.    Recent Developments

The Court does not fault Defendants for the current lack of specific assertions. It is the Court's understanding that each Defendant was provided with copies of the potentially privileged seized materials associated with his own email account only recently. As detailed in the Government's motion to disclose filter materials, on April 17, 2026, after resolving multiple disputes among the Defendants and after a newly assigned filter attorney conducted an entirely new filter review, the Government was authorized

3

to disclose items identified as being potentially privileged (approximately six thousand items in total) to the respective individual Defendant. Additionally, as the Court understands the parties' representations during oral argument, the non-privileged seized materials have been or are in the process of being distributed to all Defendants.

For the first time, therefore, each Defendant now possesses the potentially privileged emails from his own business email account. The Government maintains that, absent a valid specific privilege objection, the Defendants' arguments as to the filter process are without merit. Additionally, the Government contends that, absent a valid specific privilege objection, the entirety of these materials should be made available to each co-Defendant because they contain co-conspirator statements. As to the need for a valid, specific privilege objection, the Court agrees. Generalized objections that the filter process was "flawed" or that "privileged materials may exist" are insufficient. To enable the Court to rule on the pending motion, Defendants must articulate specific privilege objections to specific documents.

### IV.    Procedure for Resolving Privilege Disputes

To facilitate orderly, efficient, and protected resolution of these issues, the Court adopts the following procedure:

1. A sealed miscellaneous case file will be opened for each Defendant. Access to each miscellaneous case will be strictly limited to: (a) the individual Defendant to whom the case corresponds, (b) the filter attorney from the USAO (AUSA Amanda McQuaid), and (c) the Court. No member of the prosecution team will have access to any of the miscellaneous cases.

   On or before June 12, 2026 each Defendant shall file, under seal in that Defendant's respective miscellaneous case, specific objections asserting privilege or work-product protection. For each disputed document, the objection must (a) identify

4

the document by Bates number (or by another equally precise identifier that allows the filter attorney to locate it immediately) and (b) state the basis for the claimed privilege or work-product protection. Each Defendant shall also provide the Court with a copy of every disputed document by filing it under seal in that Defendant's respective miscellaneous case. Alternatively, if the disputed documents are numerous and filing them would be cumbersome, a Defendant may instead provide the Court with a thumb drive containing the disputed documents for in camera review.[1]

2. The filter attorney shall file a response, under seal in each respective miscellaneous case, on or before June 26, 2026.

3. All briefing in the miscellaneous cases shall remain sealed and shall not be visible to the prosecution team or to the other Defendants.

4. After receiving the briefing, the Court will review the disputed documents in camera and issue a ruling in each miscellaneous case as to whether a valid privilege or work-product protection exists.

5. If the Court determines that any document is privileged, the Court will then:
   a. seek additional information from the filter attorney (via affidavit or other appropriate means) regarding whether any member of the prosecution team viewed the content of that specific document;
   b. hold a taint hearing if necessary; and/or
   c. rule on the pending Motion to Dismiss or Disqualify (Doc. 80) on the basis of the pleadings and any supplemental submissions.

6. Once the Court has ruled on the existence of privilege for the disputed documents, it will also address, as appropriate, the Government's request to disclose any non-privileged (or no-longer-privileged) materials among the co-Defendants.

---

[1] The parties previously contemplated filing copies of the entire universe of potentially privileged documents (approximately 6,000 in total), in part to ensure that each Defendant would have access to his own documents. However, each Defendant already possesses his own documents. Moreover, the Court need only review those documents for which a specific privilege objection is being asserted. Therefore, there is no need to burden the Court, or the filing process, with copies of all documents that have been flagged as "potentially privileged." It is sufficient to provide the Court with copies of the documents as to which objections have been raised.

This process will allow the Court to resolve the privilege disputes efficiently while protecting any legitimate attorney-client or work-product interests and while maintaining the integrity of the prosecution team's separation from the filter process.

**SO ORDERED.**

Dated: May 26, 2026

DAVID W. DUGAN
United States District Judge