**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24-CR-30153-DWD** |
| | ) | |
| **DANA C. HOWARD, RICHARD SCOTT MYERS, and GLENN SUNNQUIST,** | ) | |
| **Defendants.** | | |

**MEMORANDUM AND ORDER**

This matter is before the Court for to address ongoing matters regarding Defendants' Motion to Dismiss the Indictment or, in the alternative, to Disqualify the Prosecution Team. (Doc. 80). For the reasons set forth below, the Motion is **DENIED** as to Defendant Richard Scott Myers ("Myers"). The Court further approves the Government's request to disclose Myers' communications to Co-Defendants Howard and Myers, and to the Prosecution Team as specified below.

## I. BACKGROUND[1]

In May 2023, the Government seized three corporate email accounts, one associated with each defendant. Recognizing the risk of attorney-client privilege or work-product material being present, the Government utilized a filter team to segregate potentially privileged items before turning materials over to prosecutors. The filter process was flawed. Prosecutors encountered potentially privileged items in a database

[1] Other pleadings and Court orders have addressed this background in further detail. This order assumes familiarity with the facts and details discussed therein.

that should have been clean on multiple occasions. This prompted Myers to file the Motion to Dismiss Indictment or Disqualify Prosecution Team. (Doc. 80). Howard and Sunnquist later joined in the motion.

Relying on *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019), Defendants argued that any executive branch filter team without advance judicial oversight is inherently unlawful. The Court rejected that argument. Relying instead on *United States v. Snyder*, 71 F.4th 555 (7th Cir. 2023), *rev'd and remanded on other grounds*, 603 U.S. 1 (2024), the Court held that the bar on delegating privilege determinations to the executive branch is triggered only by a specific concrete claim of privilege as to a particular document or communication, and that it does not extend to a generic assertion that privileged materials *might* exist somewhere in a large production. Because the defendants had not yet asserted any such claims, the Court found their motion to dismiss or disqualify premature and established a process to allow them to do so.

A sealed miscellaneous case was opened for each defendant, accessible only to that defendant, the Filter Attorney, and the Court. Each defendant was required to file under seal, by a set deadline, specific privilege or work-product objections identifying the challenged documents and the basis for the claim, and to supply those documents for the Court's in-camera review. The Filter-Attorney would then respond under seal; the Court would determine which documents are privileged and, if any are, assess whether prosecutors viewed their content before ruling on the motion.

Myers's email inbox contained 47,909 items, assigned Control Nos. 000001-000006, 062786-109863, 110172, 110173, 110189-111011 (Criminal Case No. 24-CR-30153-DWD at

Motion For Disclosure of Filter Materials, Doc. 115-7, pp. 3-4). On August 17, 2026, Myers filed his Response to Court Order Regarding Privileged Documents Seized by the Government. *See In re: Richard Scott Myers*, 26-mc-22-DWD Doc. Doc. 2. In that pleading, Myers asserts privilege over 147 of the documents in his data set. He also asserts that, and provides evidence of, a joint defense agreement between Myers, Howard, Zoie LLC (and, by inference, its employees).

Myers contends that because (1) the joint defense agreement existed prior to December 16, 2019; (2) the search warrant authorized the seizure of his email content between April 1, 2020 and September 1, 2022; and (3) the Prosecution Team was unaware of the existence of a joint defense agreement, the entirety of the filter review process was illegitimate. Myers further asserts that, given the identified privileged materials, the Government necessarily invaded his privileges. Myers does not provide any additional discussion as to why the existence of the joint defense agreement, and the Government's lack of knowledge regarding the same, renders the filter process illegitimate. Nor does he elaborate as to why seizure of privileged materials, if appropriately filtered from the Prosecution Team, amount to an invasion of the privileges asserted.

The Government, through the assigned Filter Attorney, has filed a response to Myers' privilege assertions. As an initial matter, the Government asserts that, upon review of the items identified on Myers' privilege log and the items Myers provided to the Filter Attorney, it appears that Myers is actually asserting privilege over 146 items

("Privileged Items").[2] The Filter Attorney has provided a list of the 146 Privileged Items and has attached them as Exhibit A to her responsive pleading. *See In re: Richard Scott Myers*, 26-mc-22-DWD Doc. Doc. 5-1.

The Filter Attorney represents that all 146 Privileged Items identified in Exhibit A were and are secured in the "Filter" Relativity database as "potentially privileged" items. As such, no member of the Prosecution Team, including AUSA Kevin Burke, AUSA Ali Burns, or FBI Agent Adam Hoberg, have ever had access to the Privileged Items. Additionally, a review of the document access history, maintained by the Filter Relativity database, for each of the 146 Privileged Items, reveals that only five individuals have accessed the 146 Privileged Items. *See In re: Richard Scott Myers,* 26-mc-22-DWD Doc. 5-2. None of the individuals are members of the Prosecution Team. *Id*. The Government maintains that, because no member of the Prosecution Team had access to the Privileged Items, no breach of Myers' attorney-client privilege has occurred and because no member of the Prosecution Team had knowledge of the contents of the Privileged Items, the United States is not aware of the existence of any derivative evidence that could have been obtained from the Privileged Items.

As to the existence of a joint defense agreement, the Government states that it is unaware of how the existence of such an agreement would render its filter review

---

[2] The Filter Attorney notes that Myers' list contains 2 duplicate numbers because Control Nos. 74456 and 74501 each appeared twice on the log. No. 74456 appears on pages 3 and 5. No. 74501 appears on pages 3 and 6. The Filter Attorney further notes that she did not receive a copy of Control No. 101454 which appears on Defendant's log at p. 7. However, the Filter Attorney did receive a copy of Control No. 106292, which does not appear on Defendant's log. The Filter Attorney indicates that she has maintained the originals of both documents and believes Myers intended to identify both items as privileged.

illegitimate. Nonetheless, the Government notes that, although it was not aware of the joint defense agreement, the Filter Protocol contemplated such a possibility. Accordingly, the Filter Protocol included segregation of materials which returned a positive hit for the following search terms: "JDA", "joint defense", "Goldenberg", "Milton", and "MCM". The Government maintains that, to the extent any additional items are allegedly privileged due to the joint defense agreement, Myers has a duty to identify those documents and assert the privilege.

In light of the above, the Government states it has no objection to the continued sequestering of the 146 Privileged Items identified by Myers from the Prosecution Team. The Government further seeks an order authorizing:

- The disclosure of the entirety of Myers' email inbox containing 47,909 items (assigned Control Nos. 000001-000006, 062786- 109863, 110172, 110173, 110189-111011) as referenced in Criminal Case No. 24-CR-30153-DWD at Motion For Disclosure of Filter Materials, Doc. 115-7, pp. 3-4 to CoDefendants Dana Howard and Glenn Sunnquist, noting that, due to the joint defense agreement and upon review of Myers' privilege assertions, it appears that Myers has no objection to disclosing the entirety of his dataset to CoDefendants Howard and Sunnquist; and

- The disclosure of the remaining 47,763 items in Defendant Myers' email inbox (specifically excluding the 146 Privileged Items) to the Prosecution Team.

Additionally, the Government seeks an order finding:

- No breach of Myers' attorney-client privilege or constitutional rights related to the execution of the Filter Protocol and Review as that review relates to the handling of Myers's email inbox; and

- No misconduct by the Prosecution Team or the United States related to the execution of the Filter Protocol and Review as it relates to the handling of Defendant Myers's email inbox.

*In re: Richard Scott Myers*, 26-mc-22-DWD Doc. 5, pg. 8 ¶¶ (a) and (b).

## II. DISCUSSION

As an initial matter, the Court declines to enter the affirmative findings requested by the Government. *See In re: Richard Scott Myers*, 26-mc-22-DWD Doc. 5, pg. 8 ¶¶ (a) and (b). The requested findings are unnecessary to resolve the motion as to Myers.

That being said, the Court approves the disclosure as proposed by the Government.[3] Further, as is set forth more fully below, because Myers has not identified any privileged documents or communications that were improperly accessed or used by the Prosecution Team, there is no basis for dismissal of the indictment or for disqualification of the Prosecution Team as to him.

As an initial matter, Myers' contention that the filter process was rendered "illegitimate" by the Government's belated awareness of a joint defense agreement is undeveloped. It is well established that underdeveloped arguments are considered waived. *Trentadue v. Redmon*, 619 F.3d 648, 654 (7th Cir. 2010). In any event, the existence of a joint defense agreement, does not alter the allocation of burdens as to privilege. It is Myers' burden, as the party asserting privilege, to identify the specific communications claimed to be protected and to establish each essential element of the privilege as to those communications; a blanket or generic invocation is insufficient. *See United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983); *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

[3] Myers has not responded to the Government's filing.

The further assertion that the mere presence of privileged documents among the seized materials violated Myers' rights is also undeveloped. Nonetheless, even if considered, it does not, standing alone, warrant dismissal of the indictment or disqualification of the Prosecution Team. The Attorney-client privilege is an evidentiary privilege, not a constitutional right, and a violation of the privilege is not a *per se* violation of the Sixth Amendment. *United States v. Snyder*, 71 F.4th 555, 563 (7th Cir. 2023); *United States v. Segal*, 313 F. Supp. 2d 774, 780 (N.D. Ill. 2004). A due-process violation arises only from serious governmental misconduct that is outrageous enough to shock the conscience, requiring knowledge of the attorney-client relationship, deliberate intrusion, and actual and substantial prejudice. *Segal*, 313 F. Supp. 2d at 780-81. The presence of privileged materials within a large volume of seized electronic data, standing alone, does not meet this standard. Further, as previously held by the undersigned, the Government's use of a filter team to screen for privilege does not itself render the process deficient or unconstitutional. *Snyder*, 71 F.4th at 564-65. Because the privilege is testimonial in nature, the absence of any use or introduction of privileged material means that no prejudice results. *United States v. Friedman*, 971 F.3d 700, 707 (7th Cir. 2020).

Given that the Filter Attorney has confirmed that no member of the Prosecution Team has ever accessed or viewed the 146 Privileged Items, and that the Prosecution Team will not do so in the future, there is no basis to dismiss the indictment or to disqualify the Prosecution Team. Because the prosecution team never viewed the documents, no derivative evidence could have been developed from them. Myers has not identified any derivative evidence that the Government intends to use, nor any other

prejudice flowing from the 146 Privileged Items. *See* Snyder, 71 F.4th at 564 (affirming denial of dismissal where filter process was completed, there was no purposeful intrusion, and the district court ordered non-use of any privileged data or evidence derived from it). Continued sequestration of the Privileged Items with the explicit prohibition on Prosecution Team access, is sufficient to protect the privilege.

The Motion to Dismiss the Indictment or, in the alternative, to Disqualify the Prosecution Team (Doc. 80) is therefore **DENIED** as to Myers.

## III. CONCLUSION

For the reasons set forth herein, the Court **ORDERS** as follows:

1. The Filter Attorney is authorized to disclose the entirety of Defendant Myers' email inbox containing 47,909 items (assigned Control Nos. 000001-000006, 062786-109863, 110172, 110173, 110189-111011) as referenced in Criminal Case No. 24-CR-30153-DWD at Motion For Disclosure of Filter Materials, Doc. 115-7, pp. 3-4 to Defendant's Co-Defendants Dana Howard and Glenn Sunnquist.

2. The Filter Attorney is authorized to disclose the remaining 47,763 items in Defendant Myers' email inbox (specifically excluding the 146 Privileged Items) to the Prosecution Team.

3. The Filter Attorney is **ORDERED** to continue sequestering the 146 Privileged Items from the Prosecution Team.

4. The Prosecution Team is **ORDERED** not to access, review, or use the 146 Privileged Items.

5. The Motion to Dismiss the Indictment or, in the alternative, to Disqualify the Prosecution Team (Doc. 80) is **DENIED** as to Myers.

**SO ORDERED.**

Dated: November 24, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.11.24 14:58:36 -06'00'

DAVID W. DUGAN
United States District Judge